******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAJEUNE POLLARD *v.* CITY OF
BRIDGEPORT ET AL.
(AC 43260)

Lavine, Prescott and Elgo, Js.*

*Syllabus*

The plaintiff sought to recover damages from the defendants for injuries
she sustained when she fell on a public sidewalk that was located in
the defendant city of Bridgeport, adjacent to the property owned by the
defendant S Co., a housing cooperative association. She alleged that
her injuries were the result of the defective condition of the sidewalk,
which was raised, uneven, and deteriorated. As part of the discovery
process, S Co. hired an engineering firm to lift the sidewalk in the
location of the incident and it was determined that its deteriorated
condition was the result of a large tree root growing directly beneath
the sidewalk. The root emanated from a tree growing on S Co.'s property.
S Co. filed a motion for summary judgment, claiming that it could not
be held liable for the plaintiff's alleged injuries, either by statute or
under the common law. The trial court granted the motion and rendered
judgment thereon, from which the plaintiff appealed to this court, claim-
ing that the trial court improperly granted the motion because genuine
issues of material fact existed as to whether S Co. was liable for her
injuries due to its negligence or for maintaining a nuisance that caused
the defect in the sidewalk. *Held* that the trial court properly rendered
summary judgment in favor of S Co. because no genuine issue of material
fact existed as to its liability for the plaintiff's injuries: the plaintiff could
not prevail on her claim that her injuries were the result of S Co.'s
negligence because S Co. did not owe a duty of care to the plaintiff, as
the primary responsibility for maintaining public sidewalks in a reason-
ably safe condition falls to municipalities, not abutting landowners;
moreover, neither of the exceptions to that general rule applied in this
case because there was no statute or ordinance that shifted liability
from the city to the landowner and the injury was not the result of an
affirmative act of the landowner, as the growth of tree roots is not
typically considered an affirmative act of the owner of the land on
which a tree grows and there was no evidence that S Co., or any of its
predecessors, planted the tree; furthermore, S Co. was not liable for
maintaining a nuisance that caused the defect in the sidewalk because
the sidewalk was not under its ownership or control, the plaintiff pro-
duced no evidence of any affirmative act by S Co. that caused the
sidewalk to become uneven, and the presence of the tree on its property
did not constitute an unreasonable or unlawful use of its land.

Argued November 30, 2020—officially released April 27, 2021

*Procedural History*

Action to recover damages for, inter alia, the alleged
negligence of the defendants, and for other relief,
brought to the Superior Court in the judicial district of
Fairfield, where the court, *Radcliffe, J.*, granted the
motion for summary judgment filed by the defendant
Seaside Village Homes, Inc., and rendered judgment
thereon, from which the plaintiff appealed to this court.
*Affirmed.*

*John T. Bochanis*, for the appellant (plaintiff).

*John P. Bonanno*, for the appellee (defendant Seaside
Village Homes, Inc.).

*Opinion*

LAVINE, J. "An abutting landowner is ordinarily under no duty to keep the sidewalk in front of his [or her] property in a reasonably safe condition for public travel. *Tenney* v. *Pleasant Realty Corp.*, 136 Conn. 325, 329, 70 A.2d 138 (1949). An abutting landowner can be held liable, however, in negligence or public nuisance for injuries resulting from the unsafe condition of a public sidewalk caused by the landowner's positive acts. See *Gambardella* v. *Kaoud*, 38 Conn. App. 355, 359, 660 A.2d 877 (1995)." *Abramczyk* v. *Abbey*, 64 Conn. App. 442, 446, 780 A.2d 957, cert. denied, 258 Conn. 933, 785 A.2d 229 (2001). In the present case, we conclude, as a matter of law, that the abutting landowner is not liable for the injuries sustained by a traveler on a public sidewalk who trips and falls over a defect in the sidewalk caused by the roots of a tree growing on the landowner's property, as the growth of tree roots is not a positive or affirmative act of the landowner.

In this trip and fall personal injury action, the plaintiff, LaJeune Pollard, appeals from the summary judgment rendered in favor of the defendant Seaside Village Homes, Inc. (Seaside). On appeal, the plaintiff claims that the trial court improperly granted summary judgment because genuine issues of material fact exist as to whether Seaside is liable for her injuries (1) due to its negligence or (2) for maintaining a nuisance that caused the defect in the sidewalk. On the basis of our review of the record, we conclude that there is no genuine issue of material fact that Seaside undertook no positive or affirmative act that caused the defect in the sidewalk where the plaintiff alleged that she fell. We, therefore, affirm the judgment of the trial court.

The following facts as discerned from the record are relevant to our resolution of the plaintiff's appeal. On or about February 20, 2018, the plaintiff served a complaint on Seaside and the codefendant, the city of Bridgeport (city).[1] The complaint sounded in three counts: count one alleged negligence against the city; count two alleged negligence against Seaside; and count three alleged nuisance against Seaside. In all counts of the complaint, the plaintiff alleged that, at approximately 5 p.m. on September 29, 2017, she was walking on the sidewalk in front of 82 Cole Street in the city when she fell due to the uneven, raised and deteriorated condition of the sidewalk. As a result of her fall, the plaintiff alleged that she sustained serious injuries to her knees that required medical attention, including surgical repair of her right knee. As a further result of her fall, the plaintiff alleged that she lost time from her employment, incurred medical bills and damages, lost the enjoyment of life's activities, and experienced pain and suffering.

In count one, the plaintiff alleged that the city

breached its duty to inspect, repair, maintain and keep its sidewalks in a reasonably safe condition, including the area where she fell, which is owned, controlled, and maintained by the city.[2] In count two, the plaintiff alleged that the premises or property "in front of 82 Cole Street . . . was owned, controlled and/or maintained by [Seaside] . . . ."[3] The plaintiff further alleged that Seaside "was charged with the duty to keep and maintain its property in a reasonably safe condition including the area" where she fell. She also alleged in paragraph 5 that her fall and resulting injuries were the direct result of the negligence of Seaside or its agents in one or more of the following ways, in that they (a) failed to inspect, correct or remedy the defective condition, (b) failed to use reasonable care to maintain the area where she fell in a reasonably safe condition, (c) failed to warn pedestrians of the defective condition, (d) allowed the area where she fell to deteriorate to a defective condition, (e) failed to have sufficient personnel to maintain, correct or remedy the defective conditions, and (f) actively caused or created the defective condition of the sidewalk. In count three, the plaintiff alleged that her injuries "were the result of a nuisance created by [Seaside, its agents or employees]" in that the "defective condition [of the sidewalk] was a continuing danger created by [Seaside]" or that "[t]he use of the . . . described premises permitted by [Seaside] was unreasonable and/or unlawful."[4]

On March 12, 2018, Seaside filed an answer in which it denied the material allegations of the complaint and asserted three special defenses.[5] On November 18, 2018, the city took the plaintiff's deposition, during which she testified that she "was walking and . . . was forced forward from the raised sidewalk . . . ." The plaintiff identified the raised sidewalk that allegedly caused her to fall in a photograph.

On April 15, 2019, Seaside filed a motion for summary judgment claiming that it was entitled to summary judgment as a matter of law because it cannot be held liable, either by statute or under common law, for the plaintiff's injuries allegedly arising from a defect in a public sidewalk.[6] The parties appeared before the trial court on June 24, 2019,[7] and July 15, 2019, to argue the motion for summary judgment. On July 15, 2019, the court issued an order stating that it had considered the motion for summary judgment and granted it "[a]s to both counts [two] and [three]" because there was "[n]o breach of duty by the abutting landowner, and an inability to meet the test for nuisance (Count [Three]). Allowing a tree to grow does not breach a duty of care. Duty to keep the sidewalk in repair, by statute, rests with the city of Bridgeport."[8]

The plaintiff appealed, claiming that the court improperly had determined that (1) no genuine issues of material fact existed as to whether Seaside was negli-

gent with respect to the defective condition of the sidewalk in front of 82 Cole Street and (2) no genuine issues of material fact existed as to whether Seaside maintained a nuisance that caused injuries to her. In response, Seaside contends that there is no genuine issue of material fact as to whether it is liable for the plaintiff's injuries because, as a matter of law, the duty to maintain and repair sidewalks belongs to the city and there are no genuine issues of material fact that Seaside did not undertake an affirmative or positive act that created the alleged defect in the sidewalk. We agree with Seaside.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Dreher* v. *Joseph*, 60 Conn. App. 257, 259–60, 759 A.2d 114 (2000). "The test is whether a party would be entitled to a directed verdict on the same facts." *Batick* v. *Seymour*, 186 Conn. 632, 647, 443 A.2d 471 (1982).

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996). A fact is material when it will make a difference in the outcome of a case. *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012). "The issue must be one which the party opposing the motion is entitled to litigate under [its] pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Internal quotation marks omitted.) *Trotta* v. *Branford*, 26 Conn. App. 407, 412–13, 601 A.2d 1036 (1992). "The facts at issue are those alleged in the pleadings. . . . The purpose of [a] complaint is to limit the issues to be decided at the trial of a case and [it] is calculated to prevent surprise." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Vaillancourt* v. *Latifi*, 81 Conn. App. 541, 545, 840 A.2d 1209 (2004).

"On appeal . . . [b]ecause the trial court rendered judgment . . . as a matter of law, our review is plenary and we must decide whether [the trial court's] conclu-

sions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Dreher* v. *Joseph*, supra, 60 Conn. App. 260.

I

The plaintiff's first claim is that the trial court improperly granted the motion for summary judgment because material questions of fact exist as to whether Seaside is liable in negligence for the defective sidewalk. We do not agree.

During the course of the July 15, 2019 hearing, the court granted the motion for summary judgment with respect to count two stating: "While there is a duty of an abutting landowner to conduct his affairs so as not to injure a traveler in the lawful use of the highway, the allegations of duty in paragraph 5 of the complaint clearly do not apply. There is no duty on the part of an abutting landowner to inspect a highway, which is the duty of the municipality, to repair or to maintain it or to warn . . . [of] the dangerous [or] defective condition. The only thing that the abutting landowner has an obligation to do is to conduct its affairs so as not to injure travelers, and that duty is not breached by a tree growing on the property creating a defect, which it is the duty of the municipality to repair, which is under the jurisdiction of the tree warden by statute, and which does not impose liability for essentially nonfeasance, not misfeasance on the . . . homeowner or the abutting property owner. The claim here in this complaint is that the defect is a raised, uneven, deteriorated condition of the sidewalk, that's the obligation of the city, not the abutting landowner."

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *R.K. Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). We need only address the first element of negligence because it is dispositive of the plaintiff's claim. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . Because the court's determination of whether the defendant owed a duty of care to the plaintiff is a question of law, our standard of review is plenary. . . . Our Supreme Court has stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test

invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) *McFarline* v. *Mickens*, 177 Conn. App. 83, 92, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

"It has long been established that municipalities have the primary duty to maintain public sidewalks in a reasonably safe condition. . . . General Statutes § 13a-99 further provides in relevant part that [t]owns[9] shall, within their respective limits, build and repair all necessary highways and bridges . . . except when such duty belongs to some particular person. . . . When a sidewalk along a public street in a city [has] been constructed and thrown open for public use, and used in connection with the rest of the street, [it] must, as a part of the street, be maintained by the city, and kept in such repair as to be reasonably safe and convenient for . . . travelers . . . ." (Citation omitted; footnote added; internal quotation marks omitted.) Id., 93. A town or city has a duty to keep highways in good repair, including the sidewalks. See *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 594 and n.5, 479 A.2d 793 (1984). "An abutting landowner, in the absence of statute or ordinance, ordinarily is under no duty to keep the public sidewalk in front of his property in a reasonably safe condition for travel." *Wilson* v. *New Haven*, 213 Conn. 277, 280, 567 A.2d 829 (1989). As a general rule, owners of land are not liable for injuries caused by defects on public sidewalks abutting their property. *Robinson* v. *Cianfarani*, 314 Conn. 521, 529, 107 A.3d 375 (2014).

The plaintiff argues, however, that an exception to the general rule applies in the present case, as an abutting property owner can be held liable in negligence or public nuisance for injuries resulting from the unsafe condition of a public sidewalk caused by the positive acts of the abutting property owner. *Hanlon* v. *Waterbury*, 108 Conn. 197, 200–201, 142 A. 681 (1928) (negligence to allow gasoline from pump to spill onto sidewalk); *Gambardella* v. *Kaoud*, supra, 38 Conn. App. 359, citing *Perkins* v. *Weibel*, 132 Conn. 50, 52, 42 A.2d 360 (1945) (public nuisance created by grease emanating from premises onto sidewalk). Indeed, the law of Connecticut holds that "an owner of property abutting on a highway rests under an obligation to use reasonable care to keep his premises in such condition as not to endanger travelers in their lawful use of the highway; and that if he fails to do so, and thereby renders the highway unsafe for travel, he makes himself liable." (Internal quotation marks omitted.) *Kane* v. *New Idea Realty Co.*, 104 Conn. 508, 515, 133 A. 686 (1926), quoting *Ruocco* v. *United Advertising Corp.*, 98 Conn. 241, 247, 119 A. 48 (1922). In *Kane*, the defendant was found liable for the injuries sustained by a pedestrian who slipped and fell on a patch of ice created by water that flowed from the defendant's business onto a sidewalk. *Kane* v. *New Idea Realty Co.*, supra, 509. In that case,

our Supreme Court held that by permitting water to flow from one's premises onto the land of another, the defendant engaged in an affirmative act that gave rise to potential liability. Id., 515–16. We conclude that the growth of tree roots is not an affirmative act of the owner of the land on which the tree grows.

The plaintiff alleges that Seaside was negligent in that it actively caused the defective condition of the sidewalk where the plaintiff fell, but she failed to specify what Seaside did to create the defect. On appeal, however, the plaintiff argues that a tree growing on Seaside's property caused the sidewalk to become uneven. The plaintiff, therefore, argues that there is a genuine issue of material fact as to whether Seaside was negligent by causing the defective condition of the sidewalk. The plaintiff's argument is unavailing. In opposing the motion for summary judgment, she failed to present evidence of an affirmative act by Seaside that raises a genuine issue of material fact that would bring this case within the exception to the rule that adjacent landowners are not liable for injuries sustained by travelers on a sidewalk.

In the absence of evidence supporting an affirmative act by the defendant, the plaintiff urges us to adopt the rule stated in § 363 of the Restatement (Second) of Torts, which provides: "A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." 2 Restatement (Second), Torts § 363 (2), p. 258 (1965). The plaintiff contends that the Restatement rule is applicable to the present case because the tree whose roots caused the sidewalk to be uneven was on Seaside's property. We decline the plaintiff's request to apply the Restatement rule in the present case.

As a general rule, Connecticut law holds that an abutting landowner is not liable for injuries sustained by a traveler on the highway that were caused by the defective condition of a public sidewalk. *Wilson* v. *New Haven*, supra, 213 Conn. 280. There are two exceptions to the general rule: (1) where a statute or ordinance shifts liability to the landowner to keep the sidewalk in a safe condition; see *Dreher* v. *Joseph*, supra, 60 Conn. App. 261; and (2) where the affirmative or positive act of the landowner causes the defect in the sidewalk. *Abramczyk* v. *Abbey*, supra, 64 Conn. App. 446; *Gambardella* v. *Kaoud*, supra, 38 Conn. App. 359.

The plaintiff has cited no Connecticut case that holds that a landowner is liable for damages caused by the natural growth of a tree on its property *or* that the natural growth of tree roots is a positive act of the owner of the land where the tree is growing. Our trial courts have held that the growth of tree roots is not a

positive act of the owner of the land on which the tree grows. See, e.g., *Maida* v. *Hiatt*, Superior Court, judicial district of Fairfield, Docket No. CV-08-5014786-S (April 8, 2009) (47 Conn. L. Rptr. 552); *Herrera* v. *Bridgeport*, Superior Court, judicial district of Fairfield, Docket No. CV-387059 (July 30, 2004) (37 Conn. L. Rptr. 568); *Coyle* v. *Waterbury*, Superior Court, judicial district of Waterbury, Docket No. CV-096884 (December 6, 1991) (5 Conn. L. Rptr. 342). As this court stated in *McFarline* with respect to grass that was alleged to have caused the plaintiff in that case to fall, "grass grows by itself." (Internal quotation marks omitted.) *McFarline* v. *Mickens*, supra, 177 Conn. App. 98. So, too, do a tree and its roots grow by themselves. We agree with the trial courts that the growth of tree roots is not caused by a positive or affirmative act of the owner of the land where the tree is growing.

The plaintiff urges this court to follow the reasoning of the trial court in *Toomey* v. *State*, Docket No. CV-91-57183-S, 1994 WL 75815, *6, 13 (Conn. Super. February 17, 1994), which applied § 363 (2) of the Restatement (Second) of Torts to find the state of Connecticut liable for the deaths and injuries that resulted when an extremely large branch of a red maple tree fell on a passing motor vehicle during an October snowstorm. The facts of *Toomey* are distinguishable from the facts of the case before us, which does not involve a limb or tree falling onto the highway or sidewalk.

In *Toomey*, the trial court recognized that Connecticut has established that "an owner of property abutting on a highway rests under an obligation to use reasonable care to keep his premises in such condition as not to endanger travelers in their lawful use of the highway; and that if he fails to do so, and thereby renders the highway unsafe for travel, he makes himself liable." (Internal quotation marks omitted.) *Toomey* v. *State*, supra, 1994 WL 75815, *5, quoting *Kane* v. *New Idea Realty Co.*, supra, 104 Conn. 515. It also stated that "Connecticut courts are in harmony with the many jurisdictions which generally state that an owner of land abutting a highway may be held liable on negligence principles under certain circumstances for injuries or damages resulting from a tree or limb falling onto the highway from such property." *Toomey* v. *State*, supra, *6; see *Hewison* v. *New Haven*, 37 Conn. 475, 483 (1871) (recognizing that owners of trees standing on highway are liable at common law for injuries occurring due to their neglect to trim and keep trees safe). "The duty is identified by the nature of the locality, the seriousness of the danger, and the ease with which it may be prevented. [W. Prosser, Torts (4th Ed. 1971) § 57, p. 356.]" (Internal quotation marks omitted.) *Toomey* v. *State*, supra, *5.

The court determined that the state had stepped "into the shoes of a private landowner in a similar situation";

id., *4; and had a duty to inspect the trees along the highway on the basis of foreseeability. Id., citing *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982) (duty to use care arises under circumstances in which reasonable person should have known harm of risk imposed by failure to act). The evidence in *Toomey* demonstrated that the state arborist, who was charged with the duty to inspect trees on state property, admitted that he had not inspected the trees along Route 7. *Toomey* v. *State*, supra, 1994 WL 75815, *10. The signs of decay on the red maple that fell were obvious by visual inspection and experts described the tree as a hazard tree. Id., *11. The risk the tree posed to travelers on Route 7 was foreseeable if only the state's arborist had inspected it. Id., *12. The risks posed by a decaying tree limb overhanging a state highway are distinguishable from the present case where the limbs of the trees were not in danger of falling on the sidewalk. Moreover, the roots of the tree were subterranean and not obvious from a visual inspection.

The Connecticut rule that the owner of property abutting on a highway has an obligation to use reasonable care to keep his premises in such a condition as not to endanger travelers was followed in *McDermott* v. *Calvary Baptist Church*, 263 Conn. 378, 819 A.2d 795 (2003), where a tree fell from a church yard onto a visitor in an adjacent parking lot. Id., 383, 388. Our Supreme Court stated that the trial court did not err by instructing the jury that the plaintiff "bore the burden of establishing that there were visible signs of decay or weakness of structure . . . that the church failed to observe . . . [and that] reasonable care would have resulted in those signs being seen." (Emphasis omitted; internal quotation marks omitted.) Id., 388.

In *Toomey* and *McDermott*, the courts applied the rule that "a legal duty of care entails . . . a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result . . . ." (Internal quotation marks omitted.) *McFarline* v. *Mickens*, supra, 177 Conn. App. 92; see also *McDermott* v. *Calvary Baptist Church*, supra, 263 Conn. 388; *Toomey* v. *State*, supra, 1994 WL 75815, *4. Those cases teach that the owner of land abutting a public highway has a duty to inspect his or her trees for signs of damage or decay that might cause the tree or a branch to fall.

In the present case, the plaintiff presented no evidence that reasonable care would have revealed the cause of the raised sidewalk. No one knew the reason why the sidewalk was uneven until an engineering firm retained by Seaside during the discovery phase of the litigation lifted the sidewalk revealing the root of the tree. See footnote 4 of this opinion.

The plaintiff also suggests that we follow the New

Jersey case of *Deberjeois* v. *Schneider*, 254 N.J. Super. 694, 604 A.2d 210 (1991), aff'd, 260 N.J. Super. 518, 617 A.2d 265 (App. Div. 1992), to resolve the appeal in her favor. We decline to follow the New Jersey case, as it is not binding on this court, is inconsistent with Connecticut law and is factually distinguishable from the present case.

In *Deberjeois*, the plaintiff sustained injuries "when she fell on a raised sidewalk slab caused by tree roots emanating from a tree located on the defendants', [Schneiders'], property." Id., 696. The tree was growing in the Schneiders' front lawn, four and one-half feet from the sidewalk. Id., 703 n.3. The Schneiders filed a motion for summary judgment claiming that they were exempt from liability. Id., 697. In ruling on the motion for summary judgment, the New Jersey trial court stated that the Schneiders' liability turned "on whether the defect in the sidewalk was caused by a natural condition of the land or by an artificial one." Id., 698. An artificial condition is one that comes about as a result of the landowner's affirmative act. Id., 699.

Comment (b) to § 363 of the Restatement (Second) of Torts provides: " 'Natural condition of the land' is used to indicate that the condition of land has not been changed by any act of a human being, whether the possessor or any of his predecessors in possession, or a third person dealing with the land either with or without the consent of the then possessor. It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them. On the other hand, a structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved, and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces." 2 Restatement (Second), supra, § 363, comment (b), p. 258; see also *Deberjeois* v. *Schneider*, supra, 254 N.J. Super. 700, quoting 2 Restatement (Second), supra, comment (b), p 258.

The New Jersey court stated that "a property owner would be liable where he plants a tree at a location which he could readily foresee might result in the roots of the tree extending underneath the sidewalk causing it to be elevated. The rational for the [Schneiders'] liability . . . is not because of the natural process of the growth of the tree roots. Instead it is the positive act—the affirmative act—of the property owner in the actual planting of the tree which instigated the process. The fact that the affirmative act is helped along by a natural process does not thereby make the condition a natural one within the meaning of the traditional rule." (Footnote omitted.) *Deberjeois* v. *Schneider*, supra, 254 N.J. Super. 703–704. The court, therefore, denied the motion for summary judgment. Id., 704.

In the present case, there is no evidence as to how the tree, the roots of which caused the sidewalk in front of 82 Cole Street to become uneven, came to grow on Seaside's property. Consequently, this case is similar to *Cagnassola* v. *Mansfield*, Docket No. A-1145-18T3, 2019 WL 4696142 (N.J. Super. App. Div. September 26, 2019), a personal injury case in which the plaintiffs' minor child sustained injuries when she rode her bicycle over an elevated and cracked sidewalk in front of the defendants' home. Id., *1. The plaintiffs alleged that the defendants were liable due to the dangerous condition created by a tree adjacent to the sidewalk. Id. On appeal, the New Jersey Appellate Division affirmed the trial court's granting of summary judgment in favor of the defendants and distinguished *Deberjeois*. Id., *4. The *Cagnassola* plaintiffs surmised that the original developer of the neighborhood had planted the tree; the defendants asserted that it had grown naturally. Id. Despite the plaintiffs' discovery efforts, they were unable to offer "proof of any affirmative act by the [defendants], nor by any other identified party in privity with the [defendants], creating the hazard abutting the sidewalk." Id. Unlike *Deberjeois*, there was no proof that the defendants, the prior owners, or the developer had planted the tree to create an artificial condition. Id. Such is the situation in the present case. Even if we were to adopt the position taken by the *Deberjeois* court, which we have not, the plaintiff presented no evidence to oppose Seaside's motion for summary judgment to demonstrate that Seaside had undertaken an affirmative act to plant the tree. The record does not disclose whether the tree in question was planted or grew of its own accord from an acorn or other seed.

In opposing a motion for summary judgment, an adverse party "shall file and serve a response to the motion for summary judgment . . . including opposing affidavits and other available documentary evidence." Practice Book § 17-45 (b). "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." (Citations omitted; internal quotation marks omitted.) *Inwood Condominium Assn.* v. *Winer*, 49 Conn. App. 694, 697, 716 A.2d 139 (1998).

Viewing the pleadings and facts of the present case in the light most favorable to the plaintiff, we conclude that the court properly determined that Seaside owed the plaintiff no duty of care under the circumstances and, thus, properly granted Seaside's motion for summary judgment with respect to count two, alleging negligence.

II

The plaintiff's second claim is that questions of material fact exist as to whether Seaside maintained a nuisance. We disagree.

In count three of her complaint, the plaintiff alleged in relevant part that the defective sidewalk was a continuing danger created by Seaside and that its use of the premises was unreasonable. On July 15, 2019, during the hearing on the motion for summary judgment, the court ruled from the bench with regard to count three stating: "The motion [for summary judgment] as to count three is also granted. A . . . creation of a nuisance involves four elements: it involves the creation of a dangerous and/or defective condition; it requires that it had been there for a sufficient period of time; it requires proof by a fair preponderance of the evidence that the use of the property was unreasonable; and [it requires] that the dangerous or defective condition was a proximate cause of the injury. If, in fact, the . . . use of the property, in this case the third element, is the abutting landowner's property and the defect is on another piece of property, which it is the duty of the city to keep and repair, it appears to the court that the elements of nuisance cannot be met as a matter of law and, therefore, the defendant is entitled to judgment. So the motion for summary judgment as to counts two and three of the [complaint] dated April 15 is granted." We agree with the trial court.

As previously stated, although "an abutting owner ordinarily is under no duty to keep the sidewalk in front of his property in a reasonably safe condition for public travel, he is liable in damages for a nuisance maintained by him upon it." *Perkins* v. *Weibel*, supra, 132 Conn. 52. An abutting "owner [is] liable for an injury to a traveler upon a sidewalk injured through his premises being in such condition as to endanger travelers in their lawful use of the walk." *Hanlon* v. *Waterbury*, supra, 108 Conn. 200.

"It is well settled that to prevail on a cause of action for private nuisance, a plaintiff must prove four elements: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Emphasis omitted; internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 449 n.4, 736 A.2d 811 (1999). "To constitute a nuisance in the use of land, it must appear not only that a certain condition by its very nature is likely to cause injury but also that the use is unreasonable or unlawful." *Beckwith* v. *Stratford*, 129 Conn. 506, 508, 29 A.2d 775 (1942); see also *Fisk* v. *Redding*, Conn. , , A.3d (2020) (third element requires showing that defendant's use of land was unreasonable

or unlawful).

As the trial court pointed out, the defective condition the plaintiff complained of is the raised portion of the sidewalk. The sidewalk was not under Seaside's ownership or control. As previously stated, the plaintiff produced no evidence of any affirmative act on the part of Seaside that caused the sidewalk to become uneven. The plaintiff has argued that Seaside knew of the raised sidewalk for at least a year before the plaintiff fell and was injured.[10] That fact is of no moment as Seaside had no duty to maintain or repair the sidewalk; the city is responsible for the maintenance and repair of sidewalks. Moreover, the tree on Seaside's property did not constitute an unreasonable or unlawful use of its land. We therefore conclude that the trial court properly granted Seaside's motion for summary judgment as to count three.

For the foregoing reasons, we conclude that the trial court properly granted Seaside's motion for summary judgment.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The city did not file a brief or otherwise participate in the present appeal. At the time the court granted Seaside's motion for summary judgment, the plaintiff's case against the city was still pending. Nonetheless, this court has jurisdiction to hear the plaintiff's appeal as the rendering of summary judgment disposed of all of the plaintiff's causes of action against Seaside. See Practice Book § 61-3 (appeal of judgment on part of complaint).

[2] In its original answer to the complaint, the city denied that it owned and controlled the sidewalk. On March 14, 2019, the city amended its answer and admitted that the sidewalk in front of 82 Cole Street is within the city's right-of-way and that the city has a duty to repair sidewalks. On April 30, 2019, John Urquidi, the city engineer, testified at a deposition that the sidewalk where the plaintiff allegedly fell is within the city's right-of-way.

[3] Seaside is a housing cooperative association consisting of approximately 250 units.

[4] Nowhere in her complaint did the plaintiff allege how the sidewalk came to be uneven and in a defective condition or what Seaside actively did to cause the sidewalk to be uneven. The words "tree" and "root" do not appear in the complaint.

The record discloses that, on March 14, 2019, Geoffrey B. Wardman, a professional engineer, signed an affidavit in which he attested that on January 31, 2019, at Seaside's request, he was present at the sidewalk abutting 82 Cole Street when the sidewalk flag over which the plaintiff alleged that she fell was mechanically raised for the purpose of inspecting the flag and the ground beneath it. Wardman attested in part: "Upon lifting of the subject sidewalk flag, I observed the existence of a large tree root growing directly beneath the subject sidewalk flag. The roots emanated from a tree planted upon the nearby property. . . . It is my professional opinion, within a reasonable degree of engineering certainty, that the subject sidewalk flag was caused to be misleveled by the large tree root directly beneath said sidewalk flag."

A sidewalk flag is a section of the stone or concrete surface of the walk.

[5] Seaside's special defenses alleged that (1) if the plaintiff suffered any injuries and losses they were the result of her own carelessness and negligence, (2) the plaintiff assumed the risk of walking on the sidewalk, and (3) any injuries the plaintiff allegedly sustained were caused by the negligence of third parties over which Seaside had no control.

[6] The city filed an objection to the motion for summary judgment on the procedural ground that the motion had not been filed in accordance with the scheduling order. See Practice Book § 17-44 ("[i]n any action . . . any

party may move for a summary judgment as to any claim or defense as a matter of right at any time if no scheduling order exists and the case has not been assigned for trial"). There is no indication in the record that the court ruled on the city's objection to the motion for summary judgment.

[7] On June 24, 2019, the court was thoroughly prepared to address Seaside's motion for summary judgment. The court asked the plaintiff's counsel many questions regarding the complaint's allegations of negligence as to Seaside, noting that Seaside had no duty to maintain, repair or warn about a defective sidewalk. The court particularly noted that the plaintiff had failed to allege how Seaside had used its property in a manner so as to injure travelers in lawful use of the highway, describing the allegation in subparagraph (f) as "a conclusion in search of an allegation . . . ."

Counsel for the plaintiff had not yet filed an objection to the motion for summary judgment and was unprepared to argue the substance of Seaside's motion, believing that the court was to consider the city's objection to the motion for summary judgment that day. After addressing the infirmities of the plaintiff's complaint, the court ordered the plaintiff to file an objection, if any, within one week.

The plaintiff filed an objection to the motion for summary judgement on July 1, 2019, to which she attached an affidavit that she had signed that day. The plaintiff attested that within seven days of having fallen, she took photographs of the uneven sidewalk and that the raised sidewalk was four inches high, that the property adjacent to the sidewalk is owned by Seaside and that there is a large tree on the adjacent property. The photographs taken by the plaintiff were attached as exhibits to her objection to Seaside's motion for summary judgment.

[8] The plaintiff did not seek an articulation of the court's ruling. We nevertheless are able to discern the court's reasoning from its rulings from the bench.

[9] The word "towns," as used in the statute, includes cities. See General Statutes § 13a-1 (b).

[10] Although the plaintiff argues that the condition of the sidewalk was brought to Seaside's attention one year before the plaintiff fell, it is undisputed that Seaside did not know what caused the sidewalk to be uneven until it retained an engineering firm to lift the uneven portion of sidewalk several months prior to filing its motion for summary judgment.

[11] If we were to accept the plaintiff's position that the owner of land abutting a public sidewalk is liable for the injuries sustained by a traveler due to defects in the sidewalk caused by the hidden roots of a tree growing on the owner's property, it would impose an unreasonable burden on property owners. Such owners would be obligated to expose tree roots to see where they extend and to elevate sidewalks to determine if the roots were, in fact, the source of unevenness.