******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH M. BOOTH *v.* PARK TERRACE II MUTUAL
HOUSING LIMITED PARTNERSHIP ET AL.
(AC 45094)

Alvord, Prescott and Moll, Js.

*Syllabus*

The plaintiff sought to recover damages for injuries he sustained when he
allegedly tripped and fell on a concrete walkway separating the lawns
of two buildings on a property owned by the defendants P Co. and M
Co. The defendants C Co. and T Co. were hired to work on a rehabilitation
project on the property. The plaintiff alleged that he tripped on the
raised edge of the walkway, which was perpendicular to and abutted
the front sidewalk between the two buildings. He claimed that the raised
edge created a hazardous condition. During the pretrial proceedings, P
Co. and M Co. served the plaintiff with a request for admission pursuant
to the applicable rule of practice (§ 13-22). The request stated that an
attached photograph fairly and accurately depicted the location of the
plaintiff's fall, and that the alleged proximately causative defect of the
claimed fall as asserted in the complaint was encircled in red on the
photograph. The plaintiff did not answer or object to the request for
admission, and the request for admission was deemed admitted. There-
after, P Co. and M Co. filed an expert witness disclosure, which repre-
sented that the expected testimony of their expert, C, was that the
plaintiff's fall did not occur on their property but on land owned by the
city of Hartford. Subsequently, the defendants filed motions for summary
judgment, claiming, inter alia, that the plaintiff's fall occurred on a public
sidewalk owned and maintained by the city of Hartford and that they
had no legal duty to maintain or repair the sidewalk. In support thereof,
they attached an affidavit of C, who averred that he had performed a
comprehensive land survey of the property and that the area circled on
the photograph attached to the request for admission was not private
property of the abutting owner but was a public sidewalk owned and
maintained by the city of Hartford. The defendants further argued that
the exceptions to the general rule absolving property owners of liability
for defective public sidewalks were not applicable, as there was no
ordinance shifting responsibility to the abutting landowner and the plain-
tiff's complaint had not alleged any "positive act" on behalf of the
defendants that created a defect. The plaintiff filed objections to the
motions for summary judgment, claiming that genuine issues of material
fact existed as to whether he fell on property owned by P Co. and M
Co. and whether C Co. and T Co. were contracted to repair and renovate
the walkway at issue and the abutting sidewalk, thus engaging in a
positive act. Thereafter, the plaintiff filed a request to amend the revised
complaint, in which he sought to include additional allegations as to
the construction, maintenance, and renovations by the defendants. The
trial court denied the plaintiff's request to revise and granted the defen-
dants' motions for summary judgment. On the plaintiff's appeal to this
court, *held*:

1. The trial court properly granted the defendants' motions for summary
   judgment, that court having properly determined that there were no
   genuine issues of material fact:

   a. The trial court properly concluded that there were no genuine issues
   of material fact with respect to the extent and location of the defective
   condition that caused the plaintiff's alleged fall: the location of the plain-
   tiff's fall was conclusively established by the request for admission;
   moreover, the plaintiff's claim that the admission established, at most,
   the location of the fall, and not the defective condition that caused the
   fall, was unavailing, as the court properly relied on the admission as
   conclusively establishing that the alleged defect was contained with the
   red circled area of the photograph.

   b. The trial court properly concluded that the plaintiff, as the opposing
   party, failed to present evidence demonstrating the existence of some
   disputed factual issue as to the ownership or maintenance of the area
   in which he allegedly fell: the plaintiff's submissions of sidewalk citation

and correction records, a demolition plan, and a renovation and repair plan, did not create a genuine issue of material fact as to whether the defendants were responsible for keeping the abutting sidewalk in a safe condition, as the citation and correction records related to other properties and not to the property at issue, the demolition plan contained print so small and blurry as to be practically unreadable and, although the text of that plan failed to explicate the technical design plans, the plaintiff failed to support his opposition with affidavits or deposition testimony of fact witnesses with personal knowledge of the plans or the property, and the renovation and repair plan documents were dated after the date of the plaintiff's fall and none of the extensive textual notes or legends on the plan documents were legible; moreover, representations by the plaintiff's counsel as to what was depicted in and the significance of the text in the demolition plan was not evidence.

c. Contrary to the plaintiff's contention, the operative complaint did not allege any positive acts by the defendants involving the area where the plaintiff fell to bring his claims within the positive act exception to the common-law rule that an abutting landowner is under no duty to keep the public sidewalk in front of its property safe: the plaintiff did not allege that the defendants constructed the walkway or abutting sidewalk nor did he allege that they undertook any positive act with respect to the walkway or abutting sidewalk, rather, the plaintiff alleged that the defendants failed to take affirmative steps to remediate the defective condition; moreover, the allegation that there existed a walkway that was raised higher than the abutting sidewalk could not be construed as alleging that the defendants, through a positive act, caused the defect in the sidewalk.

2. The trial court did not abuse its discretion in denying the plaintiff's request to amend his revised complaint: that court properly found that permitting the amendments would prejudice the defendants in that it would alter the substance of the plaintiff's claim while the motions for summary judgment were pending, the motions having already been fully briefed by all parties, and oral argument on those motions having already been scheduled; moreover, the plaintiff's claims that he did not assert new counts of liability and that his delay in obtaining documents from the city of Hartford was not unreasonable due to limited access to the city hall during the pandemic were unavailing, as the trial court properly determined that permitting the amendments would prejudice the defendants by requiring additional discovery and occasion further delay.

3. This court declined to review the plaintiff's claim that the trial court abused its discretion in denying his motion to preclude the expert witness affidavit offered by P Co. and M Co. in support of their motion for summary judgment: the plaintiff's claim was inadequately briefed, as he devoted only one paragraph of his brief to this claim, and he provided no analysis in support of his argument.

Argued November 8, 2022—officially released January 31, 2023

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Tolland, where the defendants filed motions for summary judgment; thereafter, the court, *Parkinson, J.*, denied the plaintiff's request to amend the complaint and his motion to preclude the expert witness affidavit of the named defendant et al.; subsequently, the court, *Parkinson, J.*, granted the defendants' motions for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*David S. Seidman*, for the appellant (plaintiff).

*Lawrence L. Connelli*, for the appellees (named defendant et al.).

*Jeffrey D. Bausch*, with whom, on the brief, was

*Donald W. Doeg*, for the appellees (defendant Crosskey
Architects, LLC, et al.).

*Opinion*

ALVORD, J. The plaintiff, Joseph M. Booth, appeals from the judgment of the trial court granting motions for summary judgment filed by the defendants, Park Terrace II Mutual Housing Limited Partnership and Mutual Housing Association of Greater Hartford, Inc. (collectively, owner defendants), and Crosskey Architects, LLC, and TO Design, LLC (collectively, design defendants), and denying the plaintiff's request to amend his complaint and his motion to preclude expert testimony. On appeal, the plaintiff claims that the court (1) improperly rendered summary judgment because genuine issues of material fact exist, (2) abused its discretion in denying his request to amend his complaint, and (3) abused its discretion in denying his motion to preclude the expert affidavit offered in support of the owner defendants' motion for summary judgment. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history is relevant to our analysis of the plaintiff's claims. On or about April 24, 2018, the plaintiff allegedly tripped and fell on a walkway separating the lawns of 286 and 290 Park Terrace in Hartford. In April, 2020, the plaintiff commenced this action against the owner defendants, owners of property located at 286 and 290 Park Terrace, and the design defendants, who were retained to work on a rehabilitation project at 286 and 290 Park Terrace. The operative complaint, which is the revised complaint filed on October 22, 2020,[1] contains six counts sounding in negligence and premises liability.

In counts one and two, the plaintiff alleged that the owner defendants "owned or were in control of and/ or had a duty to maintain the walkway and surrounding areas where the plaintiff fell." The plaintiff alleged that he tripped and fell on the walkway separating the lawns of 286 and 290 Park Terrace. Specifically, he alleged that his "left foot caught the raised edge of the concrete walkway that leads to the rear parking lot. That walkway is perpendicular to and abuts the front sidewalk between 286 and 290 Park Terrace . . . . The concrete walkway is raised higher than the abutting sidewalks creating a hazardous condition which led to [the plaintiff's] fall." The plaintiff set forth nine allegations of negligence that he contended caused his injuries: the owner defendants "failed to lower the walkway so that it was level with the abutting sidewalks . . . failed to position the slab of the walkway so that it was level with the abutting sidewalks . . . failed to shave down the slab of the walkway so it was not higher than the abutting sidewalks . . . failed to maintain the property in a reasonably safe condition . . . failed to warn the plaintiff of the dangerous condition . . . breached [their] duty to inspect [their] property from time to time to make sure that no hazards or defects existed or if a

dangerous condition existed . . . failed to inspect [their] property . . . the conditions had existed for an unreasonable period of time, yet the defendant[s] had taken no measure to remedy or correct them; and . . . [they] knew or in the exercise of reasonable care and inspection should have known of these conditions and should have taken measures to remedy and correct them, but the defendant[s] carelessly and negligently failed to do." The plaintiff alleged, inter alia, that he sustained physical injuries, he has undergone serious medical treatment, his ability to enjoy and participate in life's activities has been severely diminished, and he has lost wages.

In counts three and four, the plaintiff alleged that "[a]t all times hereto" the design defendants were hired to rehabilitate certain properties on Park Terrace, including property located at 286 and 290 Park Terrace. He alleged that the design defendants were "responsible for the construction means, methods, techniques, sequences and/or procedures of the rehabilitation." He alleged that the design defendants "owned, possessed, controlled or had an interest in and/or [were] responsible for the maintenance and/or rehabilitation of the properties located at 286 . . . and 290 Park Terrace." He alleged that the design defendants were responsible for maintaining the walkway and surrounding areas where the plaintiff fell. He further alleged that the design defendants "reviewed and surveyed the property," but failed to or "did not recommend that the raised edge of the slab where the plaintiff tripped be repaired and/or modified." In addition to the nine allegations of negligence set forth against the owner defendants, the plaintiff alleged that the design defendants "did not place markers or flags to warn the plaintiff of [the] defective condition."

In counts five and six, the plaintiff alleged that "[o]n or about April 24, 2018, and at some time prior thereto," the design defendants were "hired to design and/or work a rehabilitation plan so that invitees would be able to safely walk on the walkway and surrounding areas at the property." He alleged that the design defendants were negligent in that "[they] failed to design the rehabilitation plan so that the walkway was level with the abutting sidewalks . . . failed to design the rehabilitation plan so that [the] position of the slab of the walkway was level with the abutting sidewalks . . . failed to design the rehabilitation plan so that the slab of the walkway was not higher than the abutting sidewalk . . . failed to design the rehabilitation plan so that the property was in a reasonably safe condition . . . failed to design the rehabilitation plan so that [the] plaintiff was warned of the dangerous condition . . . breached [their] duty to inspect the property from time to time to make sure that no hazards or defects existed or if a dangerous condition existed . . . failed to inspect the property . . . the conditions had existed

for an unreasonable period of time, yet [they] had taken no measure to remedy or correct them . . . knew or in the exercise of reasonable care and inspection should have known of these conditions and should have taken measures to remedy and correct them, but [they] carelessly and negligently failed to do . . . failed to observe or inspect work in place."[2]

In November, 2020, the owner defendants served the plaintiff with a request for admission pursuant to Practice Book § 13-22. The request stated: "At the time and place referenced in [the] plaintiff's complaint, the photograph attached to Request for Admission #1 of October 20, 2020 (#109), which is marked as 'Exhibit A' and dated May 24, 2018, fairly and accurately depicts the location of the plaintiff's claimed fall, and the alleged proximately causative defect of the claimed fall as asserted in the complaint, is encircled in red in that Exhibit A"[3] (request for admission). The plaintiff did not answer or object to the request for admission. As a result of the plaintiff's failure to respond, the request for admission was deemed admitted. See Practice Book § 13-23 (a).[4]

On April 26, 2021, the owner defendants filed an expert witness disclosure, in which they disclosed Kenneth R. Cyr, a professional land surveyor and principal of Flynn & Cyr Land Surveying, LLC, a company which had performed a survey of the property (Cyr survey map). The disclosure stated that Cyr's expected testimony was "based on his education, training and experience, based on his personal familiarity with the property at issue in this case and its boundaries, based upon the [Cyr survey map], and based upon the Survey Map and Zoom-in Survey Map of the subject property, provided to all counsel of record at the time of this disclosure of expert." The disclosure represented that "[i]t is the opinion of Mr. Cyr that the alleged fall in this case did not occur on the property of these defendants, but on city of Hartford owned land."

In April, 2021, the owner defendants also filed a joint motion for summary judgment and memorandum of law in support of that motion. Therein, they argued that the plaintiff's alleged fall occurred on a public sidewalk owned and maintained by the city of Hartford. In support of that contention, the owner defendants attached an affidavit of Cyr, who averred that he and his firm had performed a comprehensive land survey of the property. Cyr averred that he carefully had reviewed the survey map and the photograph that was attached to the request for admission. Cyr averred that the "area within the red circle on that photograph, Exhibit A, is not private property of the abutting owner; rather, it is very clearly public sidewalk based on the Survey Map. The area encircled in red on Exhibit A is within the public right-of-way. . . . That area within the red circle on the photograph, is owned and maintained by the

[c]ity of Hartford, and not by the abutting landowner." (Emphasis omitted.)

On the basis of the foregoing evidence, the owner defendants argued that the alleged fall occurred within the public right-of-way, not on private property, and that, therefore, they had no legal duty to maintain or repair the sidewalk. They further argued that the exceptions to the general rule absolving property owners of liability for defective public sidewalks were not applicable, as there was no ordinance shifting responsibility to the abutting landowner and the plaintiff's complaint had not alleged any "positive act" on behalf of the defendants that created a defect.

The design defendants also filed a joint motion for summary judgment and memorandum of law in support of their motion, in which they represented that they joined fully in the motion for summary judgment, memorandum of law, and supporting exhibits filed by the owner defendants. The design defendants reiterated the owner defendants' arguments, arguing that they had no duty to maintain property owned by the city of Hartford and that the plaintiff had alleged no positive act by them.

On July 2, 2021,[5] the plaintiff filed objections to the defendants' motions for summary judgment. The plaintiff asserted that the owner defendants "constructed the abutting sidewalk, repaired it, maintained it, and have corrected various sidewalk citations relating to the abutting sidewalk." The plaintiff argued that genuine issues of material fact existed with respect to whether the plaintiff fell on the owner defendants' property or on an abutting sidewalk; whether the hazardous condition consisted of the entire walkway, which he contended was steeply sloped, or only the raised lip at the end of the walkway; whether the owner defendants, in constructing both the walkway and the abutting sidewalk and correcting various sidewalk citations issued by the city, had engaged in positive acts that imposed a duty on the owner defendants; and whether the owner defendants, in constructing the walkway and the abutting sidewalk and correcting the sidewalk citations, had possession and control over the area in which the plaintiff fell.

The plaintiff further argued that the following documents demonstrated genuine issues of material fact: a Survey and Demolition Plan dated May 8, 2001 (2001 demolition plan) purportedly showing that the owner defendants undertook substantial renovation and rehabilitation work on the property, which the plaintiff contended included constructing the subject walkway and the entire abutting sidewalk; sidewalk citation and correction records; and a layout and demolition plan dated April 25, 2018 (2018 renovation and repair plan), which the plaintiff contended included repairing walkways and the abutting sidewalk. In support of his objection

to the owner defendants' motion for summary judgment, the plaintiff filed his own affidavit, in which he averred that he had obtained the 2001 demolition plan, the 2018 renovation and repair plan, and the sidewalk citation and correction records from the city or its website and part of the 2018 renovation and repair plan from his employer during the course of his employment.[6] The plaintiff's affidavit also stated: "I believe that based on the evidence submitted, my fall occurred on the [w]alkway maintained and controlled by [the] defendants and/or their agents, and that their negligence caused the hazardous condition that resulted in my substantial injuries." He also submitted other documents as exhibits in support of his objection to the owner defendants' motion for summary judgment.

In his objection to the design defendants' motion for summary judgment, which was not accompanied by any affidavits or exhibits, the plaintiff asserted that genuine issues of material fact included: whether the design defendants, having been contracted to repair and renovate the walkway and abutting sidewalk, engaged in a positive act over the abutting sidewalk; whether the design defendants had possession and control over the walkway and/or abutting sidewalk; whether the design defendants, through their repair and renovation work on the walkway and abutting sidewalk, created the hazardous condition that caused the plaintiff's trip and fall; whether the design defendants failed to warn the plaintiff of the hazardous condition that they knew or should have known about; and the extent and scope of the hazardous condition, whether it was the entire walkway and its steep slope, or limited to the end slab of the walkway with its raised lip. The plaintiff also asserted that the design defendants failed to warn him of the hazardous condition and argued that the design defendants had failed to respond to this allegation of negligence.

On July 7, 2021, the defendants filed replies to the plaintiff's objections. The owner defendants argued that the plaintiff's affidavit was insufficient to authenticate the documents that he filed as exhibits, which contained hearsay, and that the affidavit was inadmissible to the extent that the plaintiff asserted, without personal knowledge, that he "believe[d]" that he fell on property "maintained or controlled by the defendants." The owner defendants further argued that the plaintiff had failed to plead any alleged defect in the slope of the walkway or any positive acts of the defendants. The design defendants reiterated these arguments and additionally argued that, even if the court determined that the exhibits filed in support of the plaintiff's objection and affidavit were admissible, the exhibits failed to demonstrate a genuine issue of material fact.

Oral argument on the motions for summary judgment was scheduled for July 7, 2021. On that date, the parties

appeared before the court and the plaintiff's counsel orally requested an additional two week continuance of oral argument and to file a surreply brief.[7] The court granted the plaintiff's requests and the defendants' ensuing request to file an additional surreply following the plaintiff's surreply. The court rescheduled oral argument for August 12, 2021.

In his surreply, the plaintiff not only argued that his original submissions were sufficient to demonstrate a genuine issue of material fact, but he also submitted his amended affidavit together with copies, certified by city officials, of the 2001 demolition plan, the 2018 renovation and repair plan, and the sidewalk citation and correction records. With respect to his complaint, he argued in his surreply that the operative complaint alleged that the entire walkway constituted the hazardous condition and that the defendants had engaged in positive acts, but he also filed a request to amend his complaint to "conform such allegations to the evidence recently discovered . . . that the defendants did in fact construct the abutting sidewalk, walkway, and maintain them."[8] Last, he noted in his surreply that he had sought to depose the owner defendants' expert, but that the owner defendants had filed a motion for protective order. In his surreply directed to the design defendants, the plaintiff additionally argued that these defendants knew of the hazardous condition as evidenced by their plans including a correction to the slope of the abutting sidewalk and walkway. The plaintiff argued that the design defendants failed to adequately identify and warn the plaintiff of the hazard.

The defendants filed surreplies to the plaintiff's surreply. The owner defendants reiterated that there was no genuine issue of material fact that the plaintiff's claimed fall occurred on a city sidewalk. The design defendants argued, inter alia, that they did not "have a duty of care to identify hazardous conditions outside the property boundaries," i.e., on the public sidewalk. They further argued that the 2018 renovation and repair plan is dated after the date of the plaintiff's alleged fall and, therefore, it could not form the basis of any positive act on behalf of the design defendants. Oral argument was held on August 12, 2021.

On October 14, 2021, the court granted the defendants' motions for summary judgment, rendering summary judgment in favor of the defendants on all counts. In its memorandum of decision, the court first determined that the defendants had satisfied their initial burden as movants for summary judgment. The court discussed the owner defendants' request for admission and the plaintiff's failure to respond thereto. The court determined that "it has been conclusively established that the photo[graph] marked in exhibit A of the request for admission fairly and accurately depicts the location of the plaintiff's fall and the alleged defect is contained

within the red encircled area of the photograph." The court also summarized Cyr's affidavit, in which Cyr averred that the "area within the red circle in [e]xhibit A of the defendant's request for admission is not private property of the abutting landowner, but rather is a public sidewalk." The court additionally noted Cyr's determination that the "area within the red circle on the photograph is owned and maintained by the city of Hartford, not the abutting landowner." On the basis of the request for admission and Cyr's affidavit, the court determined that the defendants had sustained their burden of demonstrating that "there is no genuine issue of material fact that the plaintiff's alleged fall occurred in the red-circled area of the request for admission, and that area is not owned and maintained by the defendants."

Having concluded that the defendants met their initial burden, the court turned to whether the plaintiff had presented evidence establishing the existence of a disputed factual issue. The court first considered the plaintiff's affidavit, which it found flawed in two ways. First, the court found that "the plaintiff's affidavit is self-serving as it is made by a party to the action" and, therefore, was insufficient to create a genuine issue of material fact. Second, the court stated that the plaintiff's averment that his fall "occurred on the walkway maintained and controlled by [the] defendants and/or their agents, and that their negligence caused the hazardous condition," amounted to a conclusory statement that lacked evidentiary support.

Next, the court turned to the exhibits submitted by the plaintiff. Specifically, the court considered the 2001 demolition plan, the 2018 renovation and repair plan, and the sidewalk citation and correction records.[9] The court assumed, without deciding, that the exhibits submitted together with the plaintiff's surreply were "sufficient to consider in support of the plaintiff's objection," but found that such evidence failed to "establish a genuine issue of material fact regarding the location of the plaintiff's fall, and who owns or controls the area where the plaintiff fell." The court viewed the exhibits in light of the plaintiff's arguments that the 2001 demolition plan showed that the defendants constructed the walkway and abutting sidewalk and that the 2018 renovation and repair plan showed plans to correct the slope of the walkway meeting the abutting sidewalk. The court found that the plaintiff's arguments were flawed "because these defects, modifications, and/or corrections are not apparently clear from the face of the plans, and there is no affidavit from an individual with personal knowledge of the area that can attest to what the plaintiff argues is contained with the plans. Without more, these are merely the plaintiff's own interpretations and assertions of the 2001 and 2018 plans and cannot create any genuine issue of material fact regarding the plaintiff's fall."

With respect to the sidewalk citation and correction records, the court stated that the records showed that the owner defendants were issued citations related to other addresses along Park Terrace, but that the record provided by the plaintiff lacked any reference to the property at issue, 286 and 290 Park Terrace. Thus, the court determined that such evidence "[did] not create a genuine issue of fact as to whether there was a defect, or whether the defendants were responsible for keeping the abutting sidewalk at 286 and 290 Park Terrace in a safe condition." Having reviewed the evidence submitted by the plaintiff, the court determined that there was no genuine issue of material fact.

The court next set forth the general rule that abutting landowners generally are not liable for injuries sustained on a defective public sidewalk. The court then addressed the plaintiff's argument that the exception to the general rule, in situations in which the defect in the sidewalk was caused by an affirmative or positive act of the landowner, applied.[10] Specifically, the plaintiff had argued "that the defendants constructed both the walkway and abutting sidewalk in 2001 and that the defendant ha[d] maintained, repaired, and renovated both the walkway and the abutting sidewalk." The court rejected this argument on the basis that the plaintiff failed to allege in his complaint that the defendants constructed the walkway or abutting sidewalk.

Accordingly, the court rendered judgment in favor of the defendants. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

With respect to the trial court's decision granting the defendant's motion for summary judgment, the plaintiff claims that the court improperly determined that no genuine issues of material fact existed. Specifically, the plaintiff contends that there are genuine issues of material fact with respect to the scope and extent of the physical characteristics and location of the hazardous condition; whether the abutting sidewalk was a municipal sidewalk, whose obligation it was to maintain the sidewalk, and who was in possession and control over the location of the plaintiff's fall;[11] and whether the defendants engaged in positive acts. We disagree with the plaintiff.

We first set forth the applicable standard of review and principles of law. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view

the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Robinson* v. *Cianfarani*, 314 Conn. 521, 524–25, 107 A.3d 375 (2014).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . Because the court's determination of whether the defendant owed a duty of care to the plaintiff is a question of law, our standard of review is plenary." (Citation omitted; internal quotation marks omitted.) *McFarline* v. *Mickens*, 177 Conn. App. 83, 92, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

"As a general rule, Connecticut law holds that an abutting landowner is not liable for injuries sustained by a traveler on the highway that were caused by the defective condition of a public sidewalk. . . . There are two exceptions to the general rule: (1) where a statute or ordinance shifts liability to the landowner to keep the sidewalk in a safe condition . . . and (2) where the affirmative or positive act of the landowner causes the defect in the sidewalk." (Citations omitted.) *Pollard* v. *Bridgeport*, 204 Conn. App. 187, 198, 252 A.3d 869, cert. denied, 336 Conn. 953, 251 A.3d 992 (2021); see also *Wilson* v. *New Haven*, 213 Conn. 277, 280, 567 A.2d 829 (1989).

A

The plaintiff first contends that there existed genuine issues of material fact as to the extent and location of the defective condition causing his alleged fall. Specifically, he argues that "the hazardous condition was not just the lip causing the fall, but the steep slope of the entire walkway that contributed to the defective raised lip on the slab." The plaintiff points to the allegations of his complaint that his injuries were caused by the defendants' failure "to lower the walkway so that it was level with the abutting sidewalks." The plaintiff contends that the court ignored his allegations and supporting evidence, including photographs that depicted

the steep slope and documentary evidence suggesting that the defendants constructed the walkway. The plaintiff argues in the alternative that, even if the entire walkway does not constitute the hazardous condition, the "concrete slab with the raised lip . . . is the hazardous condition." The plaintiff contends that he submitted evidence that the slab extends onto the owner defendants' property and, thus, there exist genuine issues of material fact as to whether the slab is the hazardous condition, the length of the slab, and whether it extends onto the owner defendants' property. The design defendants maintain that the location of the plaintiff's claimed fall was conclusively established by the request for admission and the owner defendants further respond that the plaintiff's arguments as to the slab and entire walkway are therefore irrelevant. We agree with the defendants.

As noted previously, the owner defendants served the plaintiff with a request for admission that included an attached photograph and requested that the plaintiff admit, inter alia, that the area encircled in red in that photograph "fairly and accurately depicts . . . the alleged proximately causative defect of the claimed fall as asserted in the complaint . . . ." The plaintiff did not respond to the request. Pursuant to Practice Book § 13-23 (a), the plaintiff's failure to respond to the request for admission resulted in his admission of the matter contained therein. See *Bank of America, N.A.* v. *Kydes*, 183 Conn. App. 479, 488, 193 A.3d 110 ("[t]he defendant's failure to timely answer or object to the requests for admission pursuant to § 13-23 (a), and his subsequent failure to ask the court for permission to withdraw or amend those admissions pursuant to [Practice Book] § 13-24 (a), resulted in his admission of all the matters as to which admissions were requested"), cert. denied, 330 Conn. 925, 194 A.3d 291 (2018). Specifically, it was admitted that the area encircled in red in the photograph attached to the request for admission depicted the alleged defect that proximately caused the plaintiff's claimed fall. At no time did the plaintiff seek permission to withdraw or amend the admission, and the trial court appropriately recognized in its memorandum of decision that "it has been conclusively established that the photo[graph] . . . fairly and accurately depicts the location of the plaintiff's fall and the alleged defect is contained with the red encircled area of the photograph."

The plaintiff contends in his reply brief that the defective condition was not established by the request for admission. He maintains that the admission established, at most, the location of the fall, not the defective condition that caused the fall. We reject the plaintiff's attempt to minimize the effect of his admission and conclude that the court properly relied on the admission as conclusively establishing that the alleged defect is contained within the red encircled area of the photograph,

which does not encompass the whole slab or the entire walkway.[12] Accordingly, the court properly concluded that there were no genuine issues of material fact with respect to the extent and location of the defective condition causing the plaintiff's alleged fall.

B

The plaintiff next contends that the evidence that he submitted "unequivocally created an issue of material fact as to whether the abutting sidewalk was a municipal sidewalk or was owned by the abutting owners . . . . Moreover, the evidence similarly created an issue regarding whose responsibility it was to maintain the abutting sidewalk." In support of this argument, the plaintiff relies on various sidewalk citations, which he contends "shows that both the city, along with [the owner defendants], determined that the legal obligation to maintain the abutting sidewalk belonged to [the owner defendants]." He also points to the 2001 demolition plan as showing that the owner defendants "constructed the abutting sidewalk," and the 2018 renovation and repair plan as showing that the design defendants negligently designed the walkway. The owner defendants respond that, because the sidewalk citations do not relate to the property at issue, the citations are irrelevant and do not create a genuine issue of material fact. They further respond that the 2001 demolition plan and 2018 renovation and repair plan are "unclear" and "not self-evident" and the trial court properly determined that these documents did not create a genuine issue of material fact.[13] We agree with the owner defendants.

The owner defendants submitted with their motion for summary judgment Cyr's affidavit, in which he averred that the "area within the red circle on that photograph, Exhibit A, is not private property of the abutting owner; rather, it is very clearly public sidewalk based on the Survey Map. The area encircled in red on Exhibit A is within the public right-of-way. . . . That area within the red circle on the photograph, is owned and maintained by the [c]ity of Hartford, and not by the abutting landowner." (Emphasis omitted.) The trial court determined, and we agree, that this evidence, together with the plaintiff's admission as to the location and proximate cause of his claimed fall, submitted by the owner defendants satisfied their initial burden, as the movants for summary judgment, to establish the nonexistence of a genuine issue of material fact as to ownership and maintenance of the sidewalk.

The burden then shifted to the plaintiff, as the nonmoving party, to demonstrate the existence of some disputed factual issue. *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, 332 Conn. 93, 101, 209 A.3d 629 (2019) ("[o]nce the moving party has met its burden . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue").

The plaintiff attempted to satisfy his burden by submitting the sidewalk citation and correction records, the 2001 demolition plan, and the 2018 renovation and repair plan. As the trial court recognized, the sidewalk citation and correction records relate to other properties on Park Terrace, but do not involve the property at issue. We agree with the trial court that "[w]hether the defendants were issued citations for other properties along Park Terrace does not create a genuine issue of fact as to whether . . . the defendants were responsible for keeping the abutting sidewalk at 286 and 290 Park Terrace in a safe condition."[14]

With respect to the 2001 demolition plan, the plaintiff argues that "[o]nly a cursory review without any technical expertise reveals [that] the walkway and abutting sidewalk were constructed by [the owner defendants]." He represents that on page one of the 2001 demolition plan, the walkway is not present, but that on page C-1 of the demolition plan, the walkway area "shows dots" and there are also "dotted areas" "denoting demolished or removed." He represents that page two of the 2001 demolition plan shows that the walkway was installed after the demolition. He concludes: "[A] cross-reference on page one (demolition and removal work) and page two (new work) shows [that the owner defendants] demolished the previous driveway areas and installed the walkways between each building."

Additionally, the plaintiff argues that the 2001 demolition plan shows that the owner defendants also constructed the abutting sidewalk. He argues: "The 2001 demolition plan also shows [that the owner defendants] constructed the abutting sidewalk. A review of page one of the 2001 demolition plan clearly shows the dots across the abutting sidewalk which denotes demolished and removed, as with the walkways. . . . This is highlighted. . . . Moreover, the abutting sidewalk is denoted 'All Conc. Walks and Aprons to be Demolished and Removed (As Shown, Typical).' . . . This is also highlighted. . . . This shows the abutting sidewalk, including aprons, were removed. . . .

"Page two of the demolition plan also clearly shows that a new abutting sidewalk with aprons was constructed as part of the new work. Indeed, the plans denote '4" conc. Walk', the plans for the thickness of the concrete of the abutting sidewalk. . . . This also is highlighted. . . . Page two of the 2001 demolition plans also denoted new curbing on the abutting sidewalk and new aprons, also highlighted. . . . On page two, the New Child Safe Surfacing is also denoted on the abutting sidewalk. . . . [The owner defendants] therefore also constructed the entire abutting sidewalk." (Citations omitted; emphasis omitted.)

We first note that the plaintiff's argument in his appellate brief cites and refers to uncertified reproductions of portions of the 2001 demolition plan contained in

the appendix to his appellate brief. Further, these uncertified reproductions contain highlighting and handwritten notations.[15] In its memorandum of decision, the trial court stated that all of its references were to the exhibits contained in docket entry number 150.00. None of those exhibits contain highlighting or handwritten notations. Like the trial court, we consider the exhibits contained in docket entry number 150.00 for purposes of determining whether the plaintiff satisfied his burden of demonstrating a genuine issue of material fact and we do not consider the highlighted documents or the plaintiff's arguments premised thereon.

Having thoroughly examined the 2001 demolition plan, we agree with the trial court that it does not demonstrate a genuine issue of material fact. First, much of the document contains print so small and blurry as to be practically unreadable. Aside from the readability failure, the greater concern is what can be demonstrated by the document alone. First, the text, some of which is merely abbreviations, fails to explicate these technical design plans. The plaintiff's counsel points to dotted areas supposedly depicting demolition and other text on the plan purportedly indicating construction. However, the representations of the plaintiff's counsel as to what is depicted in and the significance of the text on the 2001 demolition plan are not evidence. See *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 863, 231 A.3d 182 (2020) (representations of counsel that barcode and numbers on envelope constituted evidence that envelope was sent by regular mail were not evidence); see also *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 652 n.12, 127 A.3d 257 (2015) ("[t]his court, as well as our Supreme Court, repeatedly has stated that representations of counsel are not evidence" (internal quotation marks omitted)).

The owner defendants'[16] motion for summary judgment was supported by an expert affidavit, but the plaintiff did not provide any expert opinion in response to the averments of the owner defendants' expert to establish any genuine issue of material fact. See *Koutsoukos* v. *Toyota Motor Sales, U.S.A., Inc.*, 137 Conn. App. 655, 662–64, 49 A.3d 302 (where defendants' expert averred that airbag responded properly to accident, summary judgment was appropriate because plaintiff failed to offer expert opinion demonstrating airbag was defective), cert. denied, 307 Conn. 933, 56 A.3d 714 (2012). Nor did the plaintiff support his opposition to summary judgment with affidavits[17] or deposition testimony of fact witnesses with personal knowledge of the plans or the property. See *Salamone* v. *Wesleyan University*, 210 Conn. App. 435, 443, 270 A.3d 172 (2022) ("It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . . [T]ypi-

cally [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." (Internal quotation marks omitted.)). The trial court determined, and we agree, that the "defects, modifications, and/or corrections" as argued by the plaintiff, are "not apparently clear from the face of the plans." Without some aid, either in the form of expert opinion or a witness with personal knowledge, to explain the 2001 demolition plan, it is insufficient to demonstrate a genuine issue of material fact.

The 2018 renovation and repair plan, which is contained in docket entry number 150.00 as exhibits B and E, likewise does not create a genuine issue of material fact. First, the portion of the plan labeled "Exhibit B" is dated April 25, 2018, and the portion of the plan labeled "Exhibit E" is dated June 20, 2018—both dates are subsequent to the date of the plaintiff's alleged fall. Second, the 2018 renovation and repair plan suffers from the same defects as the 2001 demolition plan. Although the document titles are legible, none of the extensive textual notes or legends on the documents are legible. Like the 2001 demolition plan, the 2018 renovation and repair plan is unaccompanied by any affidavit to aid in its utility or interpretation.

The plaintiff contends that "our courts have held that maps and surveys alone are sufficient to create an issue of material fact without any affidavit of a surveyor or an individual with personal knowledge of such surveys."[18] The Superior Court decisions cited by the plaintiff, which are not binding precedent on this court, are also factually distinguishable. In *Marone* v. *Coric*, Superior Court, judicial district of New London, Docket No. CV-08-5007739 (February 18, 2011), the court recognized, without the submission of an affidavit, that a survey of a piece of property showed that the property contained 17.65 acres rather than 21 acres. See also *Dufford* v. *Jones-Richards, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-06-6000045 (January 8, 2009) (survey showed acreage of property was 6.4 acres more or less); *Danbury* v. *Novella*, Superior Court, judicial district of Danbury, Docket No. 318827 (April 17, 1996) (noting that land was designated as open space on tax maps). The information needed to be gleaned from the documents in the Superior Court decisions cited by the plaintiff is significantly less complex than the information the plaintiff seeks the court to extract and utilize from the exhibits he has filed. Moreover, there is no indication in those cases that there were any readability concerns with the documents.

Accordingly, we agree with the trial court that the plaintiff failed to present evidence demonstrating a genuine issue of material fact as to the ownership or maintenance of the area in which he allegedly fell.

## C

The plaintiff's next contention is that there exists a genuine issue of material fact as to whether the owner defendants and the design defendants engaged in positive acts involving the area in which the plaintiff fell. Specifically, relying on the 2001 demolition plan, the plaintiff contends that the owner defendants constructed the walkway and abutting sidewalk and, relying on the 2018 renovation and repair plan, argues that the owner defendants contracted with the design defendants to design substantial repairs and renovations to the property, including the walkway and abutting sidewalk. The defendants respond that the operative complaint does not allege any positive acts. We agree with the defendants.

As noted previously, the general rule is that "an abutting landowner is not liable for injuries sustained by a traveler on the highway that were caused by the defective condition of a public sidewalk. . . . There are two exceptions to the general rule: (1) where a statute or ordinance shifts liability to the landowner to keep the sidewalk in a safe condition . . . and (2) where the affirmative or positive act of the landowner causes the defect in the sidewalk." (Citations omitted.) *Pollard* v. *Bridgeport*, supra, 204 Conn. App. 198. In order to fall within the second exception, the plaintiff was required to assert allegations that the defendants caused the defect by performing a positive act. See *Cyr* v. *VKB, LLC*, 194 Conn. App. 871, 880, 222 A.3d 965 (2019); see also *McFarline* v. *Mickens*, supra, 177 Conn. App. 86–88 (where plaintiff alleged that she tripped and fell because of defect consisting of "a broken and cracked concrete sidewalk and adjacent curb with grass growing wildly through the crack and broken sections," court properly rendered summary judgment in absence of any allegations in complaint that defendant created wildly growing grass through positive act (internal quotation marks omitted)).

This court's decision in *Cyr* v. *VKB, LLC*, supra, 194 Conn. App. 871, guides our analysis. In that case, the plaintiff had alleged that while walking on a public sidewalk, she tripped on "an approximately one and one-half inch lip between two sidewalk segments" and fell, sustaining injuries. Id., 874. The plaintiff commenced an action against five defendants, including the owners of the property abutting the sidewalk, alleging negligence, among other causes of action. Id., 874–75. The plaintiff asserted alternative theories as to the creation of the alleged defect. Id. In counts four and five of her complaint, the plaintiff alleged that the claimed defect "developed as a result of the settling of one adjacent segment." (Internal quotation marks omitted.) Id. In counts three, six, and seven of her complaint, the plaintiff alleged that certain defendants had "constructed a sidewalk on the property with a resulting

approximately 1 1/2" lip between the sidewalk segments it installed and the sidewalk on the adjoining property." (Internal quotation marks omitted.) Id., 881. The defendants filed a motion for summary judgment in which they argued that there was no evidence "that the defendants created the alleged defect so as to fall within an exception to the general rule that liability remains with the municipality in cases involving public sidewalk defects." Id., 875–76. The court granted the motion for summary judgment. Id., 876.

On appeal, this court first considered the counts in which the plaintiff had alleged settling of the sidewalk and determined that those counts lacked any allegation that a "positive act on the part of the defendants caused the settling of the sidewalk segment." Id., 882. This court explained that "the allegation that the defect in the sidewalk 'developed as a result of the settling of one adjacent segment' suggests only that the alleged settling resulted from nature and the passage of time, which is insufficient as a matter of law to impose a duty on an abutting landowner." Id. Thus, this court concluded that those counts were legally insufficient and the trial court properly had rendered summary judgment thereon. Id.

This court next examined the counts in which the plaintiff had alleged that the defendants "constructed a sidewalk on the property with a resulting approximately 1 1/2" lip between the sidewalk segments it installed and the sidewalk on the adjoining property." (Internal quotation marks omitted.) Id., 883. This court determined that this allegation "may be reasonably viewed as alleging that [the defendants] constructed the sidewalk with the alleged defect (i.e., that the alleged defect resulted from the construction of the sidewalk)." Id., 884. Because the plaintiff had alleged that the defendants constructed the sidewalk, the defendants, in order to prevail on their motion for summary judgment, were required "to proffer evidence that either they did not construct the sidewalk or that they constructed the sidewalk without the alleged defect." Id., 885. The defendants submitted evidentiary materials with their reply brief, and the plaintiff did not object to the court's consideration of those materials. Id., 886 n.5. This court concluded that the materials submitted by the defendants did not establish the nonexistence of a genuine issue of material fact, because such materials lacked "any affidavits or other supporting documents that demonstrate that the defendants either did not construct the sidewalk or constructed the sidewalk without the alleged defect."[19] Id., 885–86.

In the present case, the plaintiff did not allege in his operative complaint that the owner defendants or the design defendants constructed the walkway or abutting sidewalk nor did he allege that they undertook any other positive act with respect to the walkway or abutting

sidewalk. Instead, he alleged that the defendants failed to take affirmative steps to remediate the defective condition. For example, the plaintiff alleged that the defendants "failed to lower the walkway" and "failed to shave down the slab of the walkway so it was not higher than the abutting sidewalks." The only allegation approaching a positive act is his allegation that the defendants "failed to position the slab of the walkway so that it was level with the abutting sidewalks."[20] The allegation that there exists a walkway that is raised higher than the abutting sidewalk cannot be construed as alleging that the defendants, through a positive act, caused the defect in the sidewalk.[21] With respect to the design defendants, the plaintiff also alleged only the failure to take affirmative steps with respect to the design, inspection, and remedy of the alleged defect. Like his claims against the owner defendants, the plaintiff's claims against the design defendants fail to allege positive acts.[22] Therefore, the plaintiff's claims do not fall within the positive act exception to the common-law rule that an abutting landowner is under no duty to keep the public sidewalk in front of its property safe.[23]

## II

The plaintiff's second claim on appeal is that the court improperly denied his request to amend his revised complaint. We disagree.

The following additional procedural history is relevant to this claim. As noted previously, on July 7, 2021, the parties appeared before the court for oral argument on the defendants' motions for summary judgment, which had been briefed fully by all parties. The plaintiff's counsel, at the commencement of the scheduled argument, orally requested a two week continuance of the oral argument and also requested permission to file a surreply, which requests the court granted. The plaintiff's counsel did not alert the court at that time that he intended to file a request to amend his complaint. Two weeks later, on July 21, 2021, the plaintiff filed his surreply briefs and also filed a request to amend his complaint and memorandum in support of that request. In his request, he represented that he sought to include allegations that the owner defendants constructed the walkway and abutting sidewalk, that the owner defendants repaired and maintained the walkway and abutting sidewalk, that the design defendants "designed, oversaw and participated in a substantial renovation of the property [in] 2018 which included the walkway and abutting sidewalk," and that the design defendants "provided the plaintiff certain surveys while the plaintiff was employed by a subcontractor of the defendants, which the plaintiff relied on during the scope of his employment, and such surveys failed to adequately warn him of the hazardous condition on the property which caused his injuries." The defendants objected to the request to amend the complaint, and the plaintiff

filed a reply. The owner defendants subsequently filed a surreply.

On October 13, 2021, the court denied the plaintiff's request to amend his complaint. In its order, the court found that "there would clearly be great prejudice to the defendants if the plaintiff was permitted to amend the complaint to allege new theories of liability against the defendants following both the filing and oral argument of the pending motions for summary judgment. The undue delay is obvious since even a cursory review of the requested revisions shows new theories of liability alleged against the defendants. Such new theories would necessitate discovery and resultant delay in concluding this matter either by summary judgment or ultimately at trial." The court concluded, given the history of the case, that it would be unjust to permit the plaintiff to further delay the matter. Accordingly, it denied the request to amend.

On appeal, the plaintiff argues that the court abused its discretion in denying his request to amend because he "did not assert new counts of liability, only allegations that conform to the original allegations of possession and control over the area where [he] fell." He contends that the delay was not unreasonable, in that he was unable to obtain the documents from the city "due to the limited access to town hall in 2020 during [the] pandemic."

We first set forth our standard of review. "Our standard of review of the [plaintiff's] claim is well defined. A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion. . . .

"A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Wahba* v. *JPMorgan Chase Bank, N.A.*, 200 Conn. App. 852, 241 A.3d 706 (2020), cert. denied, 336 Conn. 909, 244 A.3d 562 (2021). "The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case." (Internal quotation marks omitted.) *Mastrolillo* v. *Danbury*, 61 Conn. App. 693,

696, 767 A.2d 1232 (2001).

The plaintiff has failed to demonstrate that the court abused its discretion in disallowing the amendment.[24] When the plaintiff filed his request to amend after the scheduled date of oral argument, the defendants' motions for summary judgment had been briefed. The trial court found that permitting the amendment would prejudice the defendants in that it would alter the substance of the plaintiff's claim while the motions for summary judgment were pending. The court determined that the new theories of liability would require additional discovery and occasion further delay. In light of the delay and likelihood that the amendment would prejudice the defendants, we conclude that the court's ruling did not reflect an abuse of its discretion.

### III

In one paragraph of his principal appellate brief, the plaintiff claims that the court abused its discretion in denying his motion to preclude the expert witness affidavit offered by the owner defendants in support of their motion for summary judgment. We conclude that the plaintiff's claim is inadequately briefed.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021).

The plaintiff devotes only one paragraph of his principal brief to this claim. "Although the number of pages devoted to an argument in a brief is not necessarily determinative, relative sparsity weighs in favor of concluding that the argument has been inadequately briefed." (Internal quotation marks omitted.) Id., 805. The plaintiff states that "[t]he trial court erroneously denied [the plaintiff's] motion to preclude because [the Cyr survey] contained numerous errors raising serious issues of credibility. . . . The discrepancies are discussed in detail in [the plaintiff's] motion to preclude." The plaintiff has provided no analysis in support of this argument. To the extent that the plaintiff seeks to incorporate by reference any arguments raised in his motion to preclude, these arguments are inadequately briefed.[25] See *Cambridge Mutual Fire Ins. Co.* v. *Sakon*,

132 Conn. App. 370, 383 n.6, 31 A.3d 849 (2011) (arguments from opposition to motion for summary judgment incorporated by reference into appellate brief are deemed inadequately briefed), cert. denied, 304 Conn. 904, 38 A.3d 1202 (2012). Accordingly, we decline to review the plaintiff's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On July 9, 2020, the design defendants filed requests to revise the plaintiff's original complaint. On November 1, 2020, the design defendants moved for entry of nonsuit against the plaintiff for failure to file a responsive pleading to their requests to revise, which motion for nonsuit was denied by the court after the plaintiff had filed the revised complaint.

[2] The defendants filed answers including special defenses. The plaintiff filed a certificate of closed pleadings on February 22, 2021. Three days later, on February 25, 2021, the plaintiff, despite having filed a certificate of closed pleadings, filed replies to the defendants' special defenses.

[3] On October 20, 2020, the owner defendants served the plaintiff with a first request for admission, in which they incorrectly represented that the photograph marked as exhibit A was dated June 24, 2018. On November 17, 2020, the plaintiff objected to the first request for admission on the basis that "the dates are different." Thereafter, the owner defendants served the relevant request for admission.

[4] Practice Book § 13-23 provides in relevant part: "(a) Each matter of which an admission is requested is admitted unless, within thirty days after the filing of the notice required by Section 13-22 (b), or within such shorter or longer time as the judicial authority may allow, the party to whom the request is directed files and serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney. . . ."

[5] On May 21, 2021, the deadline contained in the scheduling order for filing his response to the motions for summary judgment, the plaintiff filed a motion for extension of time. Over the defendants' objections, the court granted the plaintiff an extension until July 2, 2021. Oral argument on the motions originally was scheduled for June 29, 2021, but was continued, to allow time for the objections, until July 7, 2021, leaving the defendants one business day to file their reply briefs.

[6] The plaintiff averred: "When I tripped and fell, I was an invitee for testing and data collection purposes for my employer Home Energy Technologies (HERS Rating firm), which was contracted by the [d]efendants (Crosskey and Mutual Housing Association of Greater Hartford) for rating and certification services of the [fourteen] buildings that are known as the Park Terrace II development . . . . I relied on building plans drafted by [the] defendant Crosskey . . . and site surveys drafted by [the] defendant TO Design to verify, test and inspect various stages of the renovation and repair process of the [fourteen] properties. I was not warned by the [d]efendants of the hazardous condition on the walkway."

[7] In support of his request for a continuance, the plaintiff's counsel represented that the defendants' reply briefs had been filed on the morning of the hearing and he would like the opportunity to file a surreply; he did not have the opportunity to review what the defendants had filed because he attended a funeral for a family member of a paralegal from his office and also experienced a death in his own family; and that his understanding was that the scheduled proceeding was for a status conference, not oral argument on the motions for summary judgment. Counsel for the owner defendants objected to the requested continuance, noting that he was prepared to argue the motion despite having been afforded only one business day to file his reply brief; see footnote 5 of this opinion; and that the plaintiff's counsel had not contacted him about the continuance request. The court granted the requested continuance on the basis of the deaths experienced by the plaintiff's counsel and granted his request for time to file a surreply.

[8] All defendants objected to the request for leave to amend the complaint, the plaintiff filed a reply, and the court denied the request to amend. See part II of this opinion. On August 11, 2021, the plaintiff also filed a motion to preclude Cyr's expert witness affidavit and memorandum of law in support thereof, which motion the court denied. See part III of this opinion.

[9] The court also considered the unofficial property record cards for 286-

288 Park Terrace and 290 Park Terrace, which the plaintiff submitted as exhibit D to his affidavit. The court noted that "[t]he plaintiff makes no arguments in any of his filings regarding how these property cards create a genuine issue of material fact."

[10] The court noted that the plaintiff did not claim that the other exception to the general rule, where a statute or ordinance shifts liability to the landowner, was applicable.

[11] Although the plaintiff briefs possession and control separately, we discuss the purported issues surrounding ownership, maintenance, and possession and control together. See part I B of this opinion.

[12] Last, we note that the plaintiff's contention that it was the entire walkway, or, in the alternative, the entire slab, that constituted the defect is unavailing for additional reasons, discussed further in part I B and C of this opinion. First, the plaintiff did not plead any allegations regarding a claimed "steep slope" of the walkway. Second, the plaintiff's arguments relative to the slab are premised entirely on the documents submitted in support of his surreply to the defendant's motion for summary judgment, which we determine are insufficient to demonstrate genuine issues of material fact.

[13] The design defendants argue, inter alia, that neither the 2001 demolition plan nor the sidewalk citation and correction records create a genuine issue of material fact as to the design defendants. Specifically, they contend that the 2001 demolition plan was not prepared by the design defendants and note that the plaintiff does not allege that they were involved in or prepared the 2001 demolition plan. Similarly, with respect to the sidewalk citation and correction records, the design defendants argue that they do not create a genuine issue of material fact because the plaintiff has not alleged that they had any involvement with the property in the 1990s.

[14] The plaintiff argues that "other courts have held that similar sidewalk citations, in itself, create an issue of material fact as to ownership and maintenance responsibilities." The plaintiff cites only one unpublished case issued by the Appellate Division of the Superior Court of New Jersey, which involved the question of "whether a condominium association is obligated to indemnify a first-floor commercial unit owner in the building for sums that the commercial entity paid to settle claims brought by a pedestrian who tripped on an uneven portion of the adjacent public sidewalk." *Na* v. *369 First Street Condominium Assn.*, Superior Court of New Jersey, Appellate Division, Docket No. A-2971-14T3 (May 5, 2016). Although the court referenced a citation, issued following the pedestrian's accident, to correct the sidewalk's condition, the record also included evidence that the condominium association, which was made up of the four units in a single building, had repaired the sidewalk and proportionately charged each of the unit owners for the costs. Id. We conclude that this factually and procedurally distinguishable case is not in any way persuasive of the plaintiff's contention that the sidewalk citations in the current case demonstrate a genuine issue of material fact.

[15] At oral argument before the trial court on the motions for summary judgment, the plaintiff's counsel referred to certain of the highlighted documents, which he previously had submitted in connection with his objections to the motions for summary judgment. When questioned by the court, the plaintiff's counsel responded that "[m]y office" had highlighted the document.

As noted previously, although the plaintiff argued, in his surreply, that his original submissions were sufficient to demonstrate a genuine issue of material fact, he also refiled, at docket entry number 150.00, certified documents. On appeal, he does not claim that the court erred in confining its consideration to the documents filed at docket entry number 150.00.

[16] The plaintiff does not argue that the design defendants prepared the 2001 demolition plan or had any involvement whatsoever in that plan. Thus, we analyze the 2001 demolition plan in relation to the owner defendants only.

[17] Practice Book § 17-46 "sets forth three requirements necessary to permit the consideration of material contained in affidavits submitted in a summary judgment proceeding. The material must: (1) be based on personal knowledge; (2) constitute facts that would be admissible at trial; and (3) affirmatively show that the affiant is competent to testify to the matters stated in the affidavit." (Internal quotation marks omitted.) *Atlantic St. Heritage Associates, LLC* v. *Atlantic Realty Co.*, 216 Conn. App. 530, 550, 285 A.3d 1128 (2022).

[18] The plaintiff raises three additional arguments in support of his contention that the exhibits he filed did not require accompanying affidavits. First, he argues that "allegations of a positive act that are not negated, as

in *Cyr* [v. *VKB, LLC*, 194 Conn. App. 871, 880, 222 A.3d 965 (2019)], are sufficient in itself to create an issue of material fact." We address the premise of this contention in part I C of this opinion, wherein we conclude that the plaintiff failed to allege positive acts. Second, he argues that the exhibits he filed are "certified public documents, which are self-authenticated and exempt from the rules of hearsay." The trial court, however, did not determine that the documents were inadmissible on the basis that they had not been authenticated or contained hearsay. Rather, it assumed without deciding that the documents were admissible and afforded them consideration. Third, he argues that, even if an affidavit was required, his own affidavit satisfies the requirement, in that he attested to "where he obtained the plans and that he fell on the walkway owned and maintained by [the defendants]." With respect to his averment regarding ownership and maintenance of the walkway, the trial court determined, and we agree, that it constitutes a conclusory statement insufficient to demonstrate a genuine issue of material fact. "[A] nonmoving party's conclusory affidavits alone are insufficient grounds to deny a motion for summary judgment." *Walker* v. *Housing Authority*, 148 Conn. App. 591, 597, 85 A.3d 1230 (2014).

[19] The reply materials included "certificates of use and occupancy, two photographs of the sidewalk, excerpts from the plaintiff's deposition transcript, and the affidavit of Ronald J. Houde, Jr., Esq., attesting that the submitted documents are true and accurate copies." *Cyr* v. *VKB, LLC*, supra, 194 Conn. App. 886 n.5.

[20] The plaintiff cites *Noel* v. *Beck*, Superior Court, judicial district of Middlesex, Docket No. CV-13-6009396-S (August 16, 2013), in support of his contention that the allegation regarding a failure to position the slab level is sufficient to allege a positive act. In that case, the court denied the defendants' motion to strike on the basis that the plaintiff sufficiently had alleged a positive act, where the plaintiff had defined "the alleged 'positive act' as the creating of 'an abrupt change in the elevation from the sidewalk to the driveway resulting in a raised section of paving with an untreated vertical displacements,' " which act occurred while paving the driveway. Id. In the present case, the plaintiff alleged a failure to lower the walkway, failure to shave down the slab, and failure to position the slab level, none of which rises to the level of the express allegations of paving the driveway and *creating* the raised section of paving.

[21] Throughout his principal appellate brief, the plaintiff emphasizes the allegation contained in his complaint that the defendants "were in control of" the walkway. He contends that "allegations of possession and control are sufficient allegations of a positive action." The decisions of the Superior Court cited by the plaintiff in support of this contention are distinguishable. In *Schumacher* v. *Morey*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-98064798 (August 10, 2001), the court denied a motion to strike where the plaintiff had alleged possession and control of a metal pipe that protruded from the sidewalk, not possession and control of the sidewalk generally. In *Stahl* v. *Hadelman*, Superior Court, judicial district of New Haven, Docket No. 411954 (May 17, 1999), the court denied the defendants' motion for summary judgment on the basis that the defendants had not rebutted the allegation, made in the complaint, that the defendants owned the sidewalk, that is, that the sidewalk was within the owner's property line. Thus, contrary to the representation in the plaintiff's appellate brief, the court in *Stahl* did not deny the motion for summary judgment on the basis that the allegations and evidence "[were] sufficient to establish positive acts . . . ."

[22] The plaintiff also contends that summary judgment should have been denied on the basis that he had alleged the defendants' failure to warn him of the hazardous condition. In support of this argument, he contends that "our courts have held that a duty to warn exists to business invitees for hazards on an abutting sidewalk in the immediate vicinity of the property." The Superior Court decisions on which the plaintiff relies do not support his argument and are factually distinguishable. See *Eaves* v. *Ebonas, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-19-6113052-S (August 5, 2021) (denying motion for summary judgment where evidence demonstrated "competing inferences of material fact" including ownership of sidewalk); *Swain* v. *Leninski*, 47 Conn. Supp. 660, 665–66, 823 A.2d 462 (2003) (granting defendant's motion for summary judgment after concluding that defendant had no duty under *Wilson* v. *New Haven*, supra, 213 Conn. 277, to warn user of public sidewalk of defect, declining to address whether there exists exception to *Wilson* rule in cases where "dangerous defect exists *immediately outside an exit*" (emphasis added)).

[23] Finally, the plaintiff argues that "the trial court failed to address [the plaintiff's] argument that there is also an issue of material fact whether [the defendants] were in possession and control over the area where [the plaintiff] fell, which is an element of all premises liability actions. This is a separate and distinct analysis from the positive action doctrine, independently requiring denial of [the defendants' motions for summary judgment]." We disagree that the trial court failed to address this contention. The trial court determined that the defendants satisfied their burden of demonstrating that there was no genuine issue of material fact that the plaintiff's alleged fall occurred on land owned and maintained by the city of Hartford and that the plaintiff failed to submit evidence to demonstrate a genuine issue of material fact as to whether the area in which his claimed fall occurred was owned or maintained by the defendants.

[24] The plaintiff argues that our appellate courts "have unambiguously held that it is an abuse of discretion for a trial court to deny a motion to amend a complaint to conform to facts revealed during discovery that, if denied, would moot the moving party's motion for summary judgment." Contrary to the blanket rule suggested by the plaintiff, both cases on which he relies are fact specific and do not compel the conclusion that the court improperly denied the request to amend in the present case. See *Falby* v. *Zarembski*, 221 Conn. 14, 25, 602 A.2d 1 (1992) (court abused its discretion in denying plaintiffs' motion to amend complaint where amendment sought to separate theories of liability that improperly had been pleaded in same count); *Miller* v. *Fishman*, 102 Conn. App. 286, 295, 925 A.2d 441 (2007) (court abused its discretion in denying motion to amend where proposed amendment did not set forth new theories of liability and preparation of defense would not have required significant additional time and resources), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008).

[25] The plaintiff also alludes vaguely to purported issues of credibility and errors in the Cyr survey in arguing that the court erroneously relied on Cyr's affidavit in rendering summary judgment. For the same reasons previously set forth, we conclude that this argument is inadequately briefed.

---